IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WASTE MANAGEMENT, INC | } | 4:01-MD-01422 |

| | | |
|---|---|---|
| JEFFREY COURTNEY, | } | |
| | } | |
| Plaintiff | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-05-1031 |
| | } | |
| ARTHUR ANDERSEN LLP, | } | |
| RODNEY R. PROTO, EARL E. DEFRATES, | } | |
| and WASTE MANAGEMENT, INC., | } | |
| | } | |
| Defendants | } | |

**MEMORANDUM OPINION**

Pending before the court is Defendants Arthur Anderson LLP, Rodney R. Proto, Earl E. Defrates, and Waste Management, Inc.'s (collectively "Defendants'") motion for summary judgment (Doc. 52). Plaintiff Jeffrey Courtney ("Courtney") filed his response in opposition (Doc. 56) to Defendants' motion, as well as a supplemental memorandum in opposition (Doc. 58). Defendants filed their reply to Plaintiff's response in opposition (Doc. 57) and a sur-reply to Plaintiff's supplemental memorandum (Doc. 58). For the reasons explained below, the court ORDERS that Defendants' motion for summary judgment (Doc. 52) is GRANTED.

**I. Background and Relevant Facts**

In July 1998, USA Waste Service, Inc. ("USA Waste") merged with an entity previously known as Waste Management, Inc. ("WMX") to form the new Waste Management, Inc. ("Waste Management"). A year later, Waste Management announced that it was going to miss its projected earnings for the second quarter and the fiscal year. *See* Waste Management Press Release,

July 6, 1999 (Doc. 52 Ex. 1).  In response to this announcement, as well as other allegations of wrongdoing, Waste Management's stock price plummeted and a flood of shareholder and derivative suits quickly followed.

In November 2001, the Judicial Panel on Multidistrict Litigation consolidated the pending security actions against Waste Management in the United States District Court for the Southern District of Texas, and ultimately in this court.  *See In re Waste Management, Inc. Sec. Litig.*, 177 F. Supp. 2d 1373 (J.P.M.L. 2001).  On May 1, 2002, the court issued an order approving class action settlement in the case.  Settlement Order (Doc. 52 Ex. 2).[1]  The Settlement Order *inter alia* (1) defined the "Class Period" period as running from "June 11, 1998 through November 8, 1999, inclusive;" (2) finally certified the class ("Waste Class") as those plaintiffs consisting "of all persons or entities . . . who at any time during the [Class Period](*i*) purchased or otherwise acquired Waste Management securities . . . and including but not limited to, individuals or entities who purchased or otherwise acquired USA Waste securities or WMX securities on or after June 11, 1998 . . ."; and (3) provided for a binding release ("Release") of all claims, both known and unknown, "arising out of or related, directly or indirectly, to the purchase, acquisition, exchange, retention, transfer or sale of, or investment decision involving, any Waste Management security during the Class Period . . ."  *Id.* §§ 3, 7-8.  The Release was binding on all Class Members participating in the settlement.

Courtney originally purchased 37,902 shares of USA Waste stock in May 1998.  USA Waste Stock Certificate (Doc. 52 Ex. 4).  After the July merger, the 37,902 shares of stock merely

---

[1] *See also In re Waste Management, Inc. Sec. Litig.*, Master File No. H-99-2183 at Doc. 248.

changed names, i.e., from USA Waste to Waste Management stock.  On December 31, 1999, as a result of the merger between Waste Management and Eastern Environmental Services, Courtney received an additional 9,842 shares of Waste Management Stock.  *See* Courtney's Proof of Claim (Doc. 52 Ex. 3).  During the Class Period, Courtney sold the 9,842 shares for a profit, but at the close of the Class Period, he still held the 37,902 shares of Waste Management.

After receiving notice of the class action and settlement, Courtney did not opt out of the Class, but rather submitted a Proof of Claim on both blocks of stock.  *See id.*  As part of the Proof of Claim, Courtney acknowledged that he "ha[d] read and [was] familiar with the accompanying Notice of Proposed Class Action Settlement, Right to Exclusion and Hearing ("Notice") . . . to which [the] Proof of Claim relate[d]."  *Id.* at 17.  The Notice clarified that "[i]n exchange for receiving the benefits of the settlement, your claims will be released and you will be prohibited from bringing a lawsuit or taking other actions against" the Defendants.  Notice § 6a (Doc. 52 Ex. 8).[2]  In July 2003, Courtney discussed his claim with the office of the claims administrator and was told that the 37,902 shares were not part of the claim.  Courtney Dep. 36:4-23, 37:14-17 (Doc. 59 Ex. 1).  On March 30, 2004, Courtney received a settlement check for the 9,842 shares in the amount of $6,569.32, which he subsequently cashed.  Thereafter, he filed the current action against the Defendants, complaining of damages to his block of 37,902 Waste securities.

On March 29, 2006, this court issued an order denying the Defendants' motion to

_____

[2] The Notice also warned that,

> [T]he Final Judgement will incorporate a Release discharging the [Defendants] from any and all claims or liabilities arising from or related to the Released Claims.  The Release is a critical element of the proposed settlement.  For that reason, the full text of this release is attached . . . AND YOU ARE ENCOURAGED TO CAREFULLY REVIEW THE TERMS OF THIS RELEASE.  It will affect your rights if you remain in the class.

*Id*. § 5f (emphasis in original).

dismiss for failure to state a claim.  (Doc. 42).  That same order instructed the parties to resolve

certain preliminary issues such as the Plaintiff's membership in the settlement class and the proper

law applicable to this case.  The Defendants filed an initial brief.  (Doc. 48).  The Plaintiff filed two

responses.  (Doc. 49 & Doc. 50).  On July 14, 2006, the court issued a pre-trial order (Doc. 51)

limiting the issues before the court and instructing the Defendants to file a motion for summary

judgment on the question of whether the Release bars Courtney's claims in this case.  The current

motion for summary judgment (Doc. 52) is in response to that order.

**II.  Law**

> A.    Legal Standard on Summary Judgment

A party moving for summary judgment must inform the court of the motion's basis

and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, that show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir.

2003).  The substantive law governing the suit identifies the essential elements of the claims at issue

and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim

in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*,

401 F.3d 347, 349 (5th Cir. 2005).

Once the movant makes this showing, the nonmovant must direct the court's

attention to evidence in the record sufficient to establish that there is a genuine issue of material fact

for trial.  *Celotex*, 477 U.S. at 323-24.  The non-moving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *citing U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). The nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should

be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

## B.   Settlement Agreements and Releases

The interpretation of an unambiguous settlement agreement is a question of law. *Martin v. The Brown Sch. Educ. Corp*, 2003 WL 21077454, *5 (N.D. Tex. Aug. 6, 2003) (citing *Shelton v. Exxon Corp.*, 921 F.2d 595, 602-02 (5th Cir. 1991); *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 948 (5th Cir. 1981)).   Federal law governing the interpretation of settlement agreements requires courts to be "mindful of the strong policy favoring the resolution of disputes among opposing parties." *Id.* (citing *W.J. Perryman & Co. v. Penn. Mut. Fire Ins. Co.*, 324 F.2d 791, 793 (5th Cir. 1963)).   This policy also favors the enforcement of releases, including releases in which parties have bought "peace from all future contentions." *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994).

## III.  Analysis

Courtney argues that the Release does not bar his cause of action for the 37,902 shares because  (1) an alleged ambiguity in the Notice caused his mistaken belief that the 37,902 shares were "otherwise acquired" by him during the Class Period; and (2) another alleged ambiguity in the Release caused him to believe that by filing his Proof of Claim, he was only releasing claims he may have had with respect to Waste Management shares included in the Class Period.  The court finds neither argument persuasive.  The Release bars Courtney from asserting his current claims against the Defendants.

Courtney's first argument fails because the Notice is not ambiguous.  In the Notice,

-6-

the Class is clearly defined as "all persons or entities .  .  . who, <u>during the [Class Period]</u>(i) purchased or otherwise acquired securities of Waste Management . . . and including but not limited to, individuals or entities who purchased or otherwise acquired securities of USA Waste or WMX . . . <u>on or after June 11, 1998</u> . . ." Notice 1 (Doc. 52 Ex. 8) (emphasis added).  Courtney asserts that because there was no definition of "otherwise acquired" in the Notice he justifiably  "believed that the [37,902 shares] were 'otherwise acquired' by [him] pursuant to the terms of the merger of USA Waste Services, Inc. . . . and Waste Management, Inc. on July 16, 1998 . . .since prior to that date [h]e owned no Waste Management, Inc. stock."  Courtney Aff. ¶ 2 (Doc. 56 Ex. 7).  His subjective beliefs are irrelevant.  It is not reasonable to believe that he "otherwise acquired" these shares during the Class Period because he does not dispute acquiring the 37,902 shares *before* the Class Period. The claims administer likewise determined that the 37,902 block of shares were "not exchanged for shares or assets during the Class Period as USA Waste the (acquiring company) and its securities simply underwent a name change."  Louis Addazio Letter, June 27, 2006 ("Addazio Letter") (Doc. 56 Ex. 4).  Courtney does not challenge the findings of the claim administrator.  Moreover, the court has previously found that the Class Notice:

> (a)  constituted the best practicable notice to Class Members under the circumstances of this action;
>
> (b) was reasonably calculated, under the circumstances, to apprise Class Members of (*i*) the pendency of this class action, (*ii*) their right to exclude themselves from the Class and the proposed settlement, (*iii*) their right to review discovery produced to Lead Plaintiff by Defendants, (*iv*) their right to object to any aspect of the proposed settlement, (*v*) their right to appear at the Fairness Hearing – either on their own or through counsel hired at their own expense – if they did not exclude themselves from the Class, and (*vi*) the binding effect of the Order and Judgment in this action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

(c) <u>was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice</u>, and

(d) fully satisfied all applicable requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the PSLRA, the Rules of the Court, and any other applicable law.

Settlement Order § 5 (Doc. 52 Ex. 2) (emphasis added).  Courtney had the opportunity to challenge the Notice during the pendency of the class action, but chose to accept consideration for the 9,842 shares as a Class Member instead.  For these reasons, Courtney has produced no evidence to suggest that the Notice was ambiguous.  Courtney voluntarily chose to opt in to the Waste Class, and a binding contractual obligation, such as the Release, cannot be avoided because one party, unilaterally, misunderstood certain implications of the contract.

Even if the court were to credit Courtney's defense of "unilateral mistake," Courtney's failure to return the consideration would preclude him from rescinding the Release under the doctrine of ratification.  A release may be ratified if the releasor retains consideration after learning that the release is voidable, for example, on the grounds of mistake, even if the releasor later attempts to return the consideration. *See Faris v. Williams WPC-1, Inc.*, 332 F.3d 316, 322 (5th Cir. 2003).  In an effort to avoid this rule, Courtney recently notified the claims administrator that he "intends to and does hereby rescind the contract entered into between Waste Management, Inc. and him" and "offers to reconvey the $6,569.32 received from the Waste Management Securities Litigation Settlement Fund pursuant to the Settlement." Courtney Letter (Doc. 58 Ex. 1). Courtney argues that he did not receive "official notice" until July 2006 that the 37,902 block was not included, but it is undisputed that he knew in July 2003 that those shares were not going to be included. *See* Courtney Dep. 36:4-23, 37:14-17 (Doc. 59 Ex. 1).  His offer to give back the

-8-

consideration, years later and in the course of litigation, does not negate the manifestation of his assent to be bound by the settlement agreement through his knowingly receiving and retaining consideration for his claims. Courtney retained the $6,569.32 as consideration for his participation in the Class despite knowing that he erred in his belief concerning the 37,902 block of shares, and any mistake regarding his participation in the Class has therefore been ratified.

Courtney's second argument, that his mistaken interpretation of the Release should allow for rescission of the Release, also fails. There is no ambiguity in the broadly-worded Release, and Courtney voluntarily and knowingly chose to be bound to the Release in order to benefit in the Class settlement. The Release in this case casts a wide net and specifically bars,

> each and every Claim or Unknown Claim . . . that has been, or might have been, or could be asserted against any of the Releasees at any time by or on behalf of any Class Member, in any capacity, in the Action or in any court, . . . arising out of or related, directly or indirectly, to the purchase, acquisition, exchange, retention, transfer or sale of, or investment decision involving, any Waste Management security during the Class Period.

Settlement Order § 8 (Doc. 52 Ex. 2) (emphasis added). It is undisputed that Courtney "retained" the 37,902 shares of Waste Management Stock during the Class Period. There is no ambiguity in the Release because Courtney mistakenly believed that he was releasing only those claims he would eventually be compensated for. The Release contains no such limitation. As such, the Release expressly reaches the 37,902 shares and bars Courtney's related claims.

Contract law principles governing interpretation also support the scope of the Release reaching Courtney's current claims. "[A] document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S.

52, 63 (1994) (referring to this rule as a "cardinal principle of contract construction"); *see also* Restatement (Second) of Contracts § 203(a) and Cmt. b (1981).  The inclusion of the term "retention" in the definition of "Released Claims" clearly indicates that the Release applies to shares acquired before the Class Period; otherwise, the term "retention" would be redundant of the term "acquisition" in that same definition, and therefore meaningless.  Such a result would directly contradict the "cardinal principle of contract construction" that contract terms should read consistently.  Thus, the interpretation of the Release as reaching Courtney's Waste shares purchased before the Class Period is supported by the terms the parties used in reaching a settlement agreement, an agreement Courtney knowingly and voluntarily entered into by joining the Waste Class.

The court is not persuaded by Courtney's argument that there is an ambiguity in "retention" because the term "held" in other portions of the Notice, such as the Plan of Allocation, could be read as referring only to securities that otherwise are included in the Class.  One of the factors in developing the plan of allocation of the settlement funds was "[w]hether the security was held until the end of the Class Period (November 9, 1999) or whether it was sold during the Class Period and, if so, when it was sold."  *See* Notice App. A § II(A)(4) (Doc. 56 Ex. 2).  The purpose of the Plan of Allocation, however, was to allocate the settlement funds among those participating in the Class.  Neither this purpose nor the use of the word "held" in this context has a direct bearing on the word "retain" in the Release.  "Retain" and "held" are different words used in different contexts for different reasons.  Courtney has provided no evidence that any ambiguity exists in the Release.

Nor has Courtney proved that equitable estoppel will bar the application of an

-10-

unambiguous Release.  For equitable estoppel to apply, a plaintiff must demonstrate (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance.  *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2003) (citing *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir.1993)).  Here, Courtney cannot show that he reasonably relied on his mistaken interpretation of the Release.  The Release was unambiguous and specifically embraced "each and every Claim or Unknown Claim" that arises out of, or relates to, directly or indirectly, the "retention" during the Class Period of "*any* Waste Management security.  Settlement Order § 8 (Doc. 52 Ex. 2) (emphasis added).  Courtney's claims fall directly within the ambit of the Release.  As such, he knowingly and voluntarily joined the class settlement, received payment for certain shares, and released all of his related claims.  There is no inequity in holding Courtney to the benefit of his bargain.

## IV.  Conclusion

Accordingly, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Doc. 52) is **GRANTED**.

SIGNED at Houston, Texas this 26th day of March, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE